UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>ALISON GU, a/k/a "Alison Ling," "Ally Koo," "Ai J. Chen," "Ai Jen Chen," "Jing Shao," "Yijing Gu," "Yijing Lin," "Alison Yi Gu,"<br>and<br>MATTHEW ABEL,<br>        Defendants. | Crim. No. 2:16-cr-84 |

## OPPOSITION TO MOTIONS TO SEVER

Co-defendants Gu and Abel have each moved to sever their joint trial into separate trials against each defendant alone. Gu also moves to be tried twice, once for bank fraud as charged, along with Abel, in Count One of the Superseding Indictment, and then again on Counts Two and Three for passport fraud and aggravated identity theft, respectively. If the Court grants these motions, there would be three separate trials, rather than a single trial against two persons jointly engaged in the same fraudulent scheme (part of which was Gu's efforts to obtain and use false identities as implicated in each Count). As shown below neither defendant has offered any justification for such an inefficient and unnecessary expenditure of resources.

1

## A. Background

The investigation leading to this prosecution began on March 27, 2015, when defendant Alison Gu visited the passport agency in St. Albans, Vermont. During that visit, Gu pretended to be a person named "Ally Lynn Koo," and attempted to obtain a United States Passport in that name. Gu presented, among other documents, a social security card (with a number ending in 5683) and a temporary New Hampshire Driver's License (bearing her photo), both in the name of Koo. These documents raised suspicion because they had recently issued (the license issued on February 20, 2015). Gu also presented a Texas birth certificate with a 1982 date of birth for a female by the last name of Tran, and a document purporting to have issued from the Montgomery County, Alabama, Probate Court, reflecting a legal name change from Tran to Koo. Records later confirmed that the 5683 social security number was originally associated with Tran.

Further investigation revealed that Tran had died as a child in the 1980s, and the Alabama probate court document was a forgery. Indeed, when police searched Gu's Connecticut residence in June 2016, agents discovered the fake Alabama probate court seal used to create that fraudulent document. In short, Gu sought to obtain a passport in a fake name only after she:

    (1)    identified a female born in the 1980s who had died as a child;

    (2)    forged an Alabama probate court document pretending to change that persons' name (as if she were still living in the 21st century) to Koo;

    (3)    obtained a social security card with the social security number originally issued to the long-dead female in the name of Koo; and

    (4)    used those records to obtain New Hampshire identification with Gu's photograph pretending to be Koo.

Gu's effort to obtain a passport in the name of Ally Koo forms much of the basis of Counts Two and Three of the Superseding Indictment.

Further investigation revealed that on February 20, 2015, the date the above-mentioned temporary New Hampshire Driver's License issued to "Ally L Koo," Gu also received a New Hampshire Driver's license in the name of "Ai Jen Chen." (The photographs on each license confirmed they both issued to Gu.) Similar investigation revealed that in order to obtain this "Chen" document from the New Hampshire DMV, Gu engaged in an identical scheme, as that involving the Koo passport crime. Gu identified a different female with a social security number who was born and died in the 1980s. Gu obtained the birth certificate of that person, and falsified an Alabama court document to make it appear that person was still alive and had changed her name to Chen. Using those documents, Gu then obtained a

3

social security card in the name of Chen, bearing the social security number of the long-dead female (ending in 7390).

Count One of the Superseding Indictment charges Gu and Abel with engaging in bank fraud from 2013 through September 2015. Part of the scheme involved Gu using the fake identification, including the 7390 social security number, of Chen. *See, e.g.,* Superseding Indictment, Doc. 57, at ¶ 6 (alleging that Gu furthered the scheme to defraud by establishing a "false identity using the Social Security Number of a deceased individual"). Evidence will establish that Gu and co-defendant Abel applied for several lines of credit with Gu using the fake Chen identity and the 7390 social security number of the long-dead female.

In other words, there is substantial overlap of evidence between Counts One, Two and Three of the Superseding Indictment. The same get-a-new-identity scheme is the crux of all three counts. One of the tools underlying that scheme (the fake Alabama court seal), was found during the search of Gu's residence. Her repeated execution of the strategy in furtherance of different fraudulent objectives (the passport in Counts Two and Three, and bank credit in Count One) is strong evidence that neither scheme was somehow just a mistake. Her repeated execution of the strategy, confirmed a fraudulent intent. Her repeated execution of the strategy confirmed that she was the person executing the scheme. In addition, her

4

repeated execution of the scheme confirmed she knew her representations to the banks and to the passport agency were false (since it is impossible for either or both of them to be true).

Count One of the Indictment (Bank Fraud and aiding and abetting) reflects that, as the investigation continued, agents learned that Gu had used the false Chen identity (with the commandeered 7390 social security number), to execute bank fraud with respect to several real estate purchases. Not only did Gu utilize a fake identity in her loan applications, she made several material misrepresentation in those applications relating to her financial circumstances.

Co-defendant Abel was a critical part of the scheme with regard to several of the properties. For example, after setting up a corporation to acquire real estate in Cheshire Connecticut, Abel then quitclaimed that real estate, for no consideration to Chen. Superseding Indictment, ¶¶ 3-5. Later, in May 2015, Gu obtained a loan against that same property, using falsified documents in the application. *Id.* ¶ 12. In addition, Abel obtained two parcels or real estate in furtherance of this scheme – one in Yarmouth, Massachusetts, and one in Austin, Texas – based on credit obtained by applications containing false representations. Of note, the mortgage payments for these properties were paid from a bank account held by the fake Chen/7390 identity. *See id.* ¶ 16. With regard to the transactions involving Abel,

the United States anticipates trial evidence including several documents with his signatures, notarized, connecting him to these fraudulent transactions.

Furthermore, trial evidence is expected to confirm that Abel was aware that Gu operated under various identities and that the Jury will hear sufficient evidence to conclude that Abel understood Chen was a fake identity. This evidence may include records from other court cases Gu and Abel are involved in.

**B.   Argument**

### 1. Counts One, Two, and Three Should Be Tried Together Because they Are Similar and Interrelated.

In document 90, Gu argues that the bank fraud counts of Count 1 should be tried separately from the identity/passport-related frauds of Counts 2 and 3. Gu argues "the bank fraud allegations are distinct and unrelated to the passport application." *Id.* at 3. As shown, above, however, this argument misapprehends the common scheme underlying all three counts. Gu took the identity of two girls who died in the 1980s and fabricated Alabama court records (using the fake seal discovered in Gu's home) to make it appear those girls-now-women were still alive, and using new names. Gu then used the fake court documents to obtain social security cards for the new names associated with the dead girls. Gu then leveraged those previous steps to obtain New Hampshire-issued identification cards. Far from being distinct and unrelated, it is the same scheme executed by the same person,

utilizing the same the same piece of evidence (the fake seal) to dupe the same federal (Social Security Administration) and State (New Hampshire DMV) agencies in order assume another's identity.

Rule 8(a) of the federal rules of Criminal Procedure states that an indictment may join separate counts if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "'Similar' charges," in this context, "include those that are 'somewhat alike' or those 'having a general likeness' to each other." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980)). Counts having a logical or evidentiary connection may also be tried together. *Id.*

Against this standard, it should be obvious that Counts 1 through 3 should be joined. The Superseding Indictment states in Count One that the bank fraud scheme (which occurred from 2013 to September 2015) included: that Gu sought bank credit using the identity of "Ai J. Chen," ¶¶ 4, that she "established false identities using the Social Security Number of a deceased individual," ¶ 6, and that she obtained bank credit after submitting a loan application that "contained false information with respect to the actual identities of the loan applicants." ¶¶ 12-13. Counts Two and Three state that during the time when the offense in Count One was occurring, Gu

7

made a false statement on a passport application, and that in pursuing that application, Gu unlawfully used "a means of identification of another person." As explained above, the same evidence will be used to prove all three counts. That evidence includes Gu's identity-altering strategies, and the tools she used to execute those strategies.

Gu also argues that Counts Two and Three should be severed from One because otherwise she would be unduly prejudiced. She contends that the "evidence relating to the passport application tend[s] to establish a propensity to use false identification on the bank fraud count," and vice-versa, and that "with separate trials, such propensity evidence would be excluded under Fed. R. Evid. 404(b)." Doc. 90 at 4. The Court should reject this argument for several reasons. First, Rule 404(b)(1) only prohibits introduction of evidence of other bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." It does not exclude evidence intrinsic to the execution of the scheme (such as how Gu operated her scheme).

Rule 404(b)(2) authorizes the use of other bad act evidence for purposes other than character. Specifically, such evidence may be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The fact that Gu's face appears on two New Hampshire Driver's

8

licenses bearing different names (Koo and Chen) and the circumstances by which those documents were obtained, is strong evidence that Gu is neither Koo nor Chen, and that her use of those other identities was with fraudulent intent, and not some strange mistake. It is also direct evidence of Gu's preparation and her plan for committing these frauds. Her effort to obtain a new, false passport is also evidence that she anticipated desiring to leave the United States to avoid association with her ongoing bank fraud conduct (thus showing motive).

Accordingly, were the Court to sever Counts Two and Three from Count One, the evidence at both trials would include all of the common elements of her identity escaping and altering methods. There would therefore be no prejudice to Gu in trying all three counts at once. Her motion to sever her trial into two trials should be denied.

### 2. Gu and Abel Should be Tried Together.

Both Gu and Abel seek to sever their cases from each other. Abel argues that he should not be tried with Gu for two reasons. First, Abel suggests his defense will be that he neither prepared nor submitted the fraudulent credit applications with his name on them. He believes this "it-wasn't-me" defense is antagonistic to Gu, apparently because he thinks if the jury buys his defense, they will conclude it must have been all Gu's doing. Doc. 91, at 2-4. Second, he complains that forcing him

9

to make this defense is unfair because he must then choose between a defense "and his loved one" Gu, with whom he has shared a "long term, committed domestic partnership." Doc. 91 at 4. Gu joins in Abel's motion. Doc. 90, at 4.

Neither defendant argues that the Superseding Indictment fails to allege they have "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. 8(b). They thus appear to concede that absent the above-summarized argument, there is a sufficient basis for their joinder.[1]

A defendant who seeks to sever his or her trial from that of a properly joined co-defendant bears a "heavy burden" of showing that he will suffer "substantial" prejudice from a joint trial, "such that, without a severance, he would not receive a fair trial." *United States v. Potamitis*, 564 F. Supp. 1484, 1486 (S.D.N.Y. 1983) (Weinfeld, J.), *affirmed*, 739 F.2d 784, 790 (2d Cir. 1984); *United States v. Taft*, 769 F. Supp. 1295, 1312 (D. Vt. 1991); *United States v. Aloi*, 449 F. Supp. 698, (E.D.N.Y. 1977). "Absent such a showing, the defendant's request for a separate trial must give way to the public interest in avoiding unnecessary duplicative efforts,

---

1 Abel mentions in a footnote that Counts Two and Three, which only charge Gu, contribute to his prejudice. Doc. 91, at 4 n.1. However, he offers no reason why a jury could not follow a limiting instruction with regard to consideration of those counts.

10

trial time, and expense." *Potamitis*, 564 F. Supp. at 1486.

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir.1996). "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also* Fed. R. Crim. P. 8(b). *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir.1991); *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir.1988). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro*, 506 U.S. at 537, *quoting Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

> The Supreme Court and the Second Circuit have emphasized that:
>> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Salameh*, 152 F.3d at 115, quoting *Richardson v. Marsh*, 481 U.S. at 210.

Here, the motion to sever Gu and Abel's trials should be denied outright. First, the motion is premature. It is unknown whether either will go to trial.

Second, it would be an extraordinary inconvenience and costly to have

trial time, and expense." *Potamitis*, 564 F. Supp. at 1486.

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir.1996). "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also* Fed. R. Crim. P. 8(b). *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir.1991); *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir.1988). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro*, 506 U.S. at 537, *quoting Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

The Supreme Court and the Second Circuit have emphasized that:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Salameh*, 152 F.3d at 115, quoting *Richardson v. Marsh*, 481 U.S. at 210.

Here, the motion to sever Gu and Abel's trials should be denied outright. First, the motion is premature. It is unknown whether either will go to trial.

Second, it would be an extraordinary inconvenience and costly to have

witnesses return for two or three trials rather than one. Moreover, Abel's assertion that his defense is antagonistic to Gu does not justify the imposition of such costs. "In order to make a showing of mutually antagonistic or irreconcilable defenses," Abel and Gu must make a factual demonstration that "acceptance of one party's defense would tend to preclude the acquittal of" the other. *Salameh*, 152 F.3d at 116 (citations and internal quotation marks omitted). Neither Abel nor Gu (who makes no factual assertion in this regard) can meet this standard. Abel suggests that if the jury believes him that he was ignorant of the content of the loan applications, then the jury would have to conclude that Gu had prepared them. Abel overlooks the prospect that Gu might assert the same defense, and implicitly point the finger at him. And the jury might then conclude that neither defendant was guilty beyond a reasonable doubt. Alternatively, the jury could conclude Gu prepared and electronically forged Abel's signatures, but believed the applications to be true and correct, and therefore not fraudulent. Perhaps it is more plausible that the jury concludes the loan applications (which came from the banks) are authentic. The jury may also consider the context surrounding those loan applications (including numerous notarized signatures by Abel on various closing documents resulting from those applications, and Abel's decisions not to speak with agents prior to his arrest, *see United States v. Okatan*, 728 F.3d 111, 118-19 (2d Cir.

12

2013) (discussing potential use of non-custodial silence)), and conclude that the government has met its burden as to Abel and Gu.

In any event, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants." *Zafiro*, 506 U.S. at 539. In *Zafiro*, the defendants' theory foreshadowed Abel's (and Gu's). They posited "that when two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt." *Id.* at 540. The Supreme Court rejected such a theory as a basis for granting a severance. Defendants "are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* The Court also emphasized that juries are expected and presumed to follow instructions, thus addressing defense concerns of an improper conviction. *Id.* Should there be convictions following a trial, the defendants will be entitled to have this court, and the circuit court review the record for sufficient evidence. Given these safeguards, there is no reason for the Court and the witnesses to incur the costs and inefficiencies of multiple trials.

Third, Rule 14 of the Federal Rules of Criminal Procedure permits a district

13

court to "sever . . . defendants' trials" if "joinder of . . . defendants . . . appears to prejudice a defendant." Rule 14, however does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro,* 506 U.S. at 538-39. Various remedies, short of severance, are available to the district court, including limiting instructions to the jury and redacting out-of-court statements that refer to a co-defendant by name. Jury instructions mitigate prejudice to a defendant as well. The Court may presume that the jury is capable of understanding and following limiting instructions provided during the course of and at the conclusion of trial with regard to the manner in which it may use evidence. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *United States v. Cardascia*, 951 F.2d at 484. At trials with joint defendants, courts can instruct the jury to consider separately the evidence for each. *See United States v. Feyrer*, 333 F.3d 110, 115 (2d Cir. 2003) (affirming denial of severance motion by one of several defendants where court "provided the jury . . . a charge . . . specifying that separate consideration was to be given to each count against each defendant"); *United States v. Melendez*, 301 F.3d 27, 36 (1st Cir. 2002) (joinder of offenses non-prejudicial because jury instructed to consider each charge separately); *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998) (same).

### C. Conclusion.

For the reasons explained above, the Court should deny the defendants' motions to sever.

Respectfully submitted, this 17th day of March, 2017.

        UNITED STATES OF AMERICA

        EUGENIA A.P. COWLES
        Acting United States Attorney

By:   /s/ *Michael P. Drescher*
      Michael P. Drescher
      Assistant U.S. Attorney
      P.O. Box 570
      Burlington, VT 05402-0570
      (802) 951-6725
      Michael.Drescher@usdoj.gov

Certificate of Service

By filing the above document this day via the Court's electronic filing system, I certify a copy will be served on David McColgin and Craig Nolan, Counsel for Defendants.

March 17, 2017

                                By:   /s/ *Michael P. Drescher*
                                          Michael P. Drescher
                                          Assistant U.S. Attorney
                                          P.O. Box 570
                                          Burlington, VT 05402-0570
                                          (802) 951-6725
                                          Michael.Drescher@usdoj.gov